Our last case is Longitude Licensing v. Google, 2024-1202. Good morning, Mr. Tarenko. Good morning, Your Honors. May it please the Court. The claims at issue are directed to improvements in the ways computers make adjustments to digital images. They are not directed to the mere use of a computer as a tool. The District Court erred by generalizing all 66 claims as directed to a single abstract idea, quote, the idea of improving image quality by adjusting various aspects of an image based on features of the main object in the image. In reaching that conclusion, first, the District Court did not assess the actual limitations either alone or as an ordered combination of any claim. Second, the District Court did not assess the claims in view of the specification evidence for each patent, including the portions of the specifications that explain how the claimed embodiments improved upon prior computing devices and processes for performing image adjustments. And third, the District Court erred by accepting as fact, without any evidence, that the steps and limitations recited in the asserted claims recited only conventional steps or what the District Court called standard steps. On the intrinsic record here, the claims viewed in light of the specifications and read in view of the specifications are directed to improvements to computer functionality itself. Can you drill down to a particular claim? Yes. You're running out of time, and these kind of general statements don't, for me, move the ball down the field. For example, Claim 32 of the 365 patent is directed to a process that improves the computer's ability to make tailored adjustments to main objects in digital images based on the characteristics of the image itself. The claim recites that the main object is determined, and then the process acquires the properties of the main object image data that has been determined, then acquires correction conditions corresponding to those properties of the main object image data, and uses those correction conditions to make adjustments to the main object. So this objection is focusing on the main image? The Claim 32, yes, is focused on the main object image data itself. In the background of the specification. It doesn't tell you how to do that, right? It does. It recites acquiring the properties of that main object image data and acquiring correction conditions corresponding to the main object image data. Is there a claim construction argument as to the meaning of correction conditions? There hasn't been a specific claim construction presented. You're not urging one? We're not urging one. Okay. No. The correction conditions are described in the specification as parameters such as hue, saturation, brightness. When I say correction conditions in the claim, should I just basically think correction information? No, I think conditions are changes. Acquiring correction conditions from a database, I think the claim says. There are tables presented in the specification that describe the corrections to be made based on the properties corresponding to the properties of the image data, yes. The question becomes, why should I think about this as being some kind of implementation idea when the claim just talks about some form of undefined correction information that the alteration of the image will be based upon? So the correction information. I think that's like Hawk or Recognitor, where I think it was Hawk that talked about, well, we're going to display a bunch of images on this one screen using spatial and temporal parameters. And it didn't talk about what those parameters were, and it didn't even talk about how those parameters would be used or how those parameters got generated, but it just said parameters. And it sounded like a great idea to be able to display a bunch of images all on one screen and then you would use some special parameters to do that, but we said, no, that wasn't good enough. And now I'm trying to compare that on a general level to these claims where we're talking about, we're going to improve the appearance of an image in a picture based on something called correction conditions. We have a different evidentiary record here than in Recognitor or Hawk. Here, the specification explains that there were prior computer approaches to making adjustments to digital image that did not use the acquisition of properties of the main object, did not use a correlation, a correspondence between the properties and correction conditions to determine which conditions to use to adjust the main object. The specification explains, in the background, that prior processes performed a standardized image adjustment without taking into account the properties, it calls the subtle characteristics, of the main object data itself. Prior to that, users had to manually interact with the software in order to subjectively make changes. So the computer picks up information and processes the information. So why isn't that abstract? The computer specifically acquires properties of the data and makes a correspondence between the properties and the correction conditions in the system, and that's what's different than the prior systems described in the background that were inferior and could not make tailored adjustments to objects. We're not talking about obviousness. Right. So isn't this just software? It is software, but software can be patent eligible. This is akin to McRow or EnFish, where the intrinsic record, the intrinsic evidence, tells us that this improved upon prior software computing processes, as in HAWQ, as in Recognacorp, or electric power systems, for example. There was evidence cited by the court that what the claim was recited had been done before, and the computer was merely being used as a tool. Here, the intrinsic record tells us that what is being claimed is an improvement to the computer functionality itself, not the mere use of the computer as a tool. Well, the claims use the word acquiring twice. How does the acquiring occur? The claim does not specify precisely how the acquiring occurs. The system acquires it from maybe stored in memory, but the claim does not specify exactly how. The how provided in the claim is how to make an adjustment to the main object image data itself as compared to the prior inferior processes, which performed a standardized image adjustment process without acquiring properties of the main objects and without acquiring correction conditions corresponding to those properties to make a more specific adjustment. Would you agree that the claims here are a tougher case for patent eligibility compared to McRow, given that McRow's claim had more specificity as to the rules that were being employed there in order to have a synchronized animation? I respectfully disagree, and the reason is, again, the intrinsic record and the evidence in both cases. The claim alone must be read in view of the specification, so we have to look at both. In McRow, the claim read in view of the specification. The specification provided evidence that what was recited in the claim, the rules, and specifically, I believe, the submorph weights, were an improvement over prior computerized processes for performing such animation. Similarly here, the specification provides the same evidence. And at Rule 12, and in the analysis at Step 1 of ALICE, when we look at the intrinsic record, here the intrinsic record is all one way. But you're not seeking any kind of claim construction here, so you're not trying to shovel in any of the content from the written description into the claim. That's correct. You're more just trying to use it as a backdrop to better understand what these broad claim terms mean. That's correct. And using it specifically as the evidentiary record, we have that these inventions, what is claimed, what is recited there, improves upon prior computing processes and devices and renders these claims patent eligible. And what specific is focusing on the main object? I'm sorry, Your Honor. What specific is focusing on the main object? Focusing on determining the main object and then operating only on that, yes, including acquiring the properties of that specific data, and then acquiring the correction conditions corresponding to those properties as illustrated in the tables we reproduced in our brief and in the figures of the patent. Other claims, Your Honor, recite different improvements to the way the computers adjust image data. For example, Claim 5 of the 365 patent describes an improvement to the accuracy the computer has in determining what is the main object in a digital image. Claim 5 recites segmenting the image into a plurality of areas and acquiring position data for each of the areas and analyzing the position data and the image data to identify where main objects reside in the image. And again, the specification explains that prior processes did not perform those operations, did not segment the data into areas, and as a result would make erroneous determinations of the main object. For example, it explains that prior systems would use only analysis of color data to determine where a main object might be. That produced what it calls determination errors. For example, if somebody is wearing a sky blue shirt, the computer may mistake that shirt for what is actually a sky blue sky and misidentify the main object in the image. So by using both position data and image data to analyze where the main object resides, the invention in Claim 5 improves the accuracy that the computer can provide in determining the main object compared to prior systems. The 056 patent, Your Honors, relates to both improving accuracy and improving color balance correction on images compared to prior processes. The 056 patent explains with reference to the embodiments described in Claim 10 that prior systems performed only color balance correction, what it calls across the entire image, which produced inferior results, like if you had a bluish or lightish background, perhaps making the skin of a person red-tinged instead of its actual color. But in Claim 10 of the 056 patent, by using a determination method to identify a specific subject area, using a location of a target area and pixel values in that target area to identify the specific subject, calculating a specific subject characterization value, again, from the data in the specific subject area, not all the data in the image, and calculating the correction value to be used for color balance correction using the specific subject characterization value and a target characterization value to obtain the correction value, and then using that correction value, again, tailored to the data in the main object itself to perform color balance correction, that allows the computer to more accurately represent and display, for example, a human face with the correct skin tone as compared to the prior approaches identified in the specification that performed color balance correction only across the entire image. Finally, the 109 patent recites Claim 1 recites an improved image file that includes image data, location data of a person in the image, and scene shooting information to specify, for example, a portrait scene being applied. That allows the computer, compared to prior approaches that included only image data, to identify the precise location of the person in the image and perform a sharpness adjustment on that person when the scene shooting information specifies that it is a portrait scene. That is like the Finchon case, where there is a new computer file with new information. The specification explains this is new, this is different, and it is improved. That enables the computer to perform those operations that otherwise had to be done by what the specification calls ad hoc selection of data for sharpening. You are approaching your time limit. I assume you want to save what you have left. Thank you. I reserve the remainder of my time. Ms. Anders. Thank you. Ginger Anders for Google LLC. Longitude's claims are directed to the abstract idea of adjusting digital images based on the main object of the image rather than the image as a whole. Starting with Claim 32, which the parties have treated as the main claim here, the subject of that claim is a quintessential abstract idea. The court has held over and over again that manipulation of data, analysis of data, including enhancement of digital images, is abstract. Is manipulation of data always an abstract idea? Data processing? I think data processing is almost always going to be an abstract idea. The question would be, the harder question would be, is the claim directed to that abstract idea? I think there, when the claim does concern data manipulation... Right, and that claim wasn't directed to the abstract idea because the rules that were incorporated in those claims were so specific. And so I think the overarching question the court is trying to answer is, is this an improvement in the computer's functioning as such, or is it merely an improvement in the uses to which the computer can be put? And the court has used the specificity of the claims as sort of a marker to help answer that question. Many of these claims, let's say the representative claim 32, had many more steps in how you go about getting the properties of the image data and getting the correction conditions and then applying those correction conditions to the properties of the image. Let's say you identify that the person in the picture is a particular person and you've already pre-stored in your memory what the ideal coloring of the skin of that person is, and then you go look that up and then see that there's actually something off here. There's a differential with this particular captured image of the person. And then you undertake a series of steps to modify the captured image of the person so that it looks like the ideal color that's stored in the memory. And let's just say that takes a lot of steps to do all of that. Would that be patent eligible? I think it might well be, and so here's why. So what the court has done is it has looked to what the patentee claims as the technological innovation, the improvement in the technological functioning of the computer, and then asked whether, as Hawk put it, there's a sufficient recitation in the claim of how that improvement is achieved. So here Longitude says the improvement of claim 32 is tailoring the correction conditions to the main object in the image. And so the question is, does the patent explain how to do that? I think this claim does not because it simply says acquire. So you're requiring that in Judge Chen's hypothetical the steps are part of the claim. So if the steps were part of the claim, if there were a recitation of exactly how to tailor the correction conditions to the main object, then we might have a situation more like McRow. But we don't have that here because all the claim says is acquire the properties of the correction conditions, determine the correction conditions, and then correct the object. It just claims that functional result. And so because of that, I think it's... What if everything that I just said in my hypothetical claim was something that people did already? So maybe there's a 102 or 103 problem with automating it. But nevertheless, the claim would recite a series of, I don't know, a long series of steps that you would do to fix the image, to get it right, to get it the way you want it to be. But those were steps that were already done by humans in altering a photo or a picture of a person. Well, I think issues like that might be better addressed through 102 or 103. But I think in the context of the abstract idea analysis, is this directed to an abstract idea? I think we're mostly asking what kind of improvement is the patentee claiming? And have they recited how to achieve that improvement in technological function? Now, you might say there's no improvement in technological function if all of the steps have already been done in the prior art. So that might be one way to get at it through the abstract idea part of 101. But I think here, there's sort of no... We don't even get to that question because the steps are so broadly functionally claimed. I think that is a strong indication. I think it's basically dispositive here, that the patentee is just claiming the result here. It's just claiming an improvement in the use to which a computer can be put, its existing functions can be put, because there's no explanation of how to achieve this claimed invention of tailoring the correction conditions to the main object. Does the articulated abstract idea by the district court capture Claim 5, which is really more about position data? I think it does because the RID description actually says that Claim 5 is an aspect of the same invention. So I think they're all related here. They share that written description. And so what Claim 5 is simply doing is the first step of determining the main object. So I do think that the district court's analysis captures all that. And this court said in Trinity that when all of the claims go to one basic abstract idea, they can all be considered together. So I think that's what the district court did here. And I think Claim 5 suffers from the same basic problem, which is Longitude claims that the improvement here is better detecting, more accurately detecting the main object. But, of course, the claim does not say how to do that. It simply says you acquire the image data and the position data and then determine the main object using that position data and the results of analysis. It's hard to imagine a more generic functional term than use the results of analysis to determine the main object. So I think there, too, it's very clear that this is simply claiming the result. And as this court has said, when there isn't a recitation of how the claims actually achieve the result they're trying to achieve, that is an indication that the claims are abstract because they're not actually describing an improvement in computer functioning. So in that sense, I think they're very much like the claims that were at issue in Hawk, which was a method of taking multiple surveillance videos and altering their format and then transmitting them. And the patentee said, well, that is an improvement because it allows us to conserve data without sacrificing quality. And the court said, no, the claims are simply directed to this sort of very generic converting the video sources into a particular resolution using a set of temporal and spatial parameters. And those weren't explained in the claims. And I think it's the exact same thing here in Claim 5 and Claim 32 in each of these claims, where you have the claim saying, you know, acquire the position data, do the results of the analysis, and then determine the main object. So it's simply the result that's claimed, and that is an abstract idea. And I think the same thing is true with respect to Claim 1 of the 109 patent, which is the one involving an image file. So that one, too, is simply about adjusting the main object of the image. It's about increasing the sharpness of the main object. And Longitude has said that that uses a new image file structure. But in fact, the written description proves that this is a standard image file. It says that the exif file is a format standard for digital still cameras. That's on Appendix 106. And you may also use other image files that are generated by a digital video camera or scanner. And that's on Appendix 107. So I think it's pretty clear here that the image file is simply a standard format. And the information that's included in the image file is standard as well. That is location information, so where you focus the camera is what the written description says. And the scene information is when you choose, the photographer chooses the scene on the camera, like when you choose portrait mode. So the specification, the written description makes clear that those are the types of information that can be used that's simply standard information. So I think this court looks to prior cases to determine whether, as a marker, to determine whether something is directed to an abstract idea. As I said, I think this case, these claims are very similar to Hawk. They're very similar to Sanderling, to Recognitor. The only case that Longitude has pointed to as similar is McRow, but I think that comparison actually helps us. Because if you look at the claim there, it had been construed to include this incredibly specific rule that set all the variables that explain how they should be applied in the animation process. I think it's worth just reading what that rule was. It said define a MorphWeight set stream as a function of phoneme sequence and times associated with said phoneme sequence. Apply that to each subsequence of timed phonemes. So that was incredibly specific. Compare that to these claims, which say acquire the position data, use the results of analysis, determine the main object, apply the correction conditions. Just these generic terms that tell us that these claims are not revealing an improvement in how the computer functions technologically. Have you taken a crack at reading 365 patent? I have, yes. It's pretty intricate about what it talks about. There's a lot of math in there. Do you and Google think there's something here that could be at least patent eligible? Maybe not patentable in your view, but nevertheless at least crosses the threshold for consideration for a patent. I don't think that Longitude has pointed to anything in the patent that would be patent eligible. I'm asking you what you think based on your review of this patent. No, I don't think so. I guess the main reason, I would say, is that all of those, as the court said in charge point, all the technical details in the written description can't be imported into the claims. And, of course, Longitude has never... What about whether a patent-eligible claim could be drafted in light of this 28-column patent with all this math? It may well be that in theory a patent-eligible claim could be drafted. If you think about McRow, I think that provides a model for how one might do it. But that is not these claims, the point I was just making, that they look very, very different. The claims in McRow are incredibly specific. That matters because, of course, it is the specificity that tells us that the patentee is describing an improvement in the computer's technological functioning rather than simply a new use to which existing computers can be put. And so I think... That's where the problem will overbread, right? Even if you've got a mathematical construct that gives you a specific patentable invention, that doesn't mean that you can claim more broadly without incorporating the specifics in the claim. That's exactly right, and it goes to one of the core concerns of Section 101, which is preemption, which is that a claim like Claim 32 broadly preempts a lot of ways of adjusting the main object of an image because it is so generically drafted. And that's why the Court said in Chargepoint you can have all of these technical details in a specification, but they can't just be imported into the claims in order to make the claims patent-eligible because it really does matter what the claims say. That's the bounds of exclusion that the patentee is claiming. And so this preemption concern is very, very present when you have generic claims like these. And so I think that's the real concern here. And, of course, Longitude is free to ask for claim construction. They chose not to do so. And so I think we take the claims as we find them, and they are incredibly broad, incredibly generic, and they do not reflect any kind of technical detail that you might find in the written description. Math is quintessentially abstract. Math can be abstract. A claim can be non-abstract, even if it has a math formula in it. But I think these claims are just simply so functional, so generic, that it's very clear that they're not directed towards a technological improvement. Anything further? Not if the Court has no further questions. Thank you.  Mr. Sharon Crowe has some rebuttals on. Two minutes. Thank you, Your Honor. All software claims recite manipulation of data and functions at some level. The Court's precedents are consistent that where there is evidence in the specification that what is claimed as here in all of these patents is an improvement over a prior computing process that delivered inferior results. Those claims are patent eligible either at Step 1, as in McRow, or at Step 2, as in Kosmokey. And the claim in view of the specification on that record is what tells us how to separate those claims from claims that are merely organizing information and using a computer as a tool to speed that up. The length of the claim itself and the number of limitations is not the relevant test. For example, visual memory systems recited a main memory, a cache, and a programmable operational characteristic determines the type of data stored by the cache. And that's it. But the intrinsic record, the intrinsic evidence, said that is an improvement upon the computer systems that came before and that's what we have here. What we don't have here, unlike Hawk, ChargePoint, electric power systems, we don't have evidence that what is recited in these claims has ever been done before by people, in computers, or otherwise. So all the evidence says these are patent eligible improvements. There is no evidence to support the principle that this is merely automating a known fundamental concept using the computer as a tool because prior automated processes existed like a standardized image adjustment that did not use correction conditions corresponding to properties. And the claim conventions, for example, Claim 32, improve upon those systems by more accurately making adjustments to main objects and digital images. Thank you. Thank you. Both counsel, the case is submitted. That concludes today's argument.